572 So.2d 203 (1990)
Laura Laj Jean JOHNSTON, et al.
v.
NORCONDO, a Louisiana Partnership, et al.
No. 89 CA 1502.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Rehearing Denied January 18, 1991.
Writ Denied March 28, 1991.
P. Bruin Hays, III, and Celeste Brustowicz, New Orleans, for plaintiffs-appellants.
John J. Holahan, Jr., New Orleans, for defendant-appellee Travelers Ins. Co.
Richard Watts, Franklin, for defendant-appellant R.L. Hodges Const. Co.
Regel Bisso, New Orleans, for defendant-appellee Robert B. Anderson.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
This suit was brought by the owners (plaintiffs) of four condominium units which share one continuous concrete foundation (slab). Plaintiffs allege defects in the slab which have resulted in unsightly and dangerous cracks to the slab itself (including one which runs the width of the 46-foot slab), as well as structural damage to the frames of the separate units. Plaintiffs also allege mental anguish damages resulting from the "apprehension associated with knowledge that plaintiffs' homes are of little or no market value, and that plaintiffs' homes pose a potential danger to property and person." Plaintiffs seek rescission and monetary damages. Norcondo, a partnership, as well as the four partners individually, were made defendants as vendors, and R.L. Hodges Construction Company (Hodges), along with its insurer Travelers Insurance Company (Travelers), were made defendants as "manufacturer of the units" and insurer thereof (under a comprehensive general liability policy), respectively.
The sole issue before us now is whether a summary judgment which dismissed Travelers, based upon exclusionary language in its policy, was appropriate. Both plaintiffs and Hodges have appealed.
The policy is essentially an insurance portfolio, consisting of various forms and endorsements including a standard fire policy form, a business automobile policy form, a standard property form, and, pertinent to this matter, a "Comprehensive General Liability" form along with a "Broad Form Comprehensive General Liability Endorsement." The liability forms are modified *204 by five pages of provisions and definitions ("Liability Provisions" and "Additional Liability Provisions") and three pages of declarations. The trial court based its decision upon exclusion (n) found in the Comprehensive General Liability Form. This form provides coverage, in simple terms, for "all sums which the Insured shall become legally obligated to pay as damages because of ... bodily injury or ... property damage to which this insurance applies, caused by an occurrence...." The simplicity ends here. The form then provides "[t]his insurance does not apply:" and lists numerous exclusions, including, "(n) to property damage to the Named Insured's products arising out of such products or any part of such products...." The trial court concluded that Hodges was a manufacturer of a product,[1] and that any liability arising from a defect in that product is excluded under the language quoted above; the court further excluded any liability for non-pecuniary damages (i.e., mental anguish) reasoning that such damages are "consequential" to the expressly excluded property damage and thus likewise excluded.
Plaintiffs assert error in the summary judgment, reasoning that exclusion (n) is expressly limited to "property damage." We agree. The policy covers both "bodily injury" and "property damage." The exclusion at issue is in derogation of the policy's broad grant of coverage and is to be construed narrowly. We cannot extend its application to "bodily injury." In Old River Terminal Co-Op v. Davco Corp., 431 So.2d 1068 (La.App. 1st Cir. 1983), we held that consulting fees and transportation fees for inventory relocation necessitated by structural defects in a warehousing facility were consequential and thus included within a "work-product" exclusion similar to exclusion (n). The obvious distinction here is that "bodily injury" is specifically covered under the policy, and plaintiffs at bar premise their non-pecuniary damages upon a separate cause of action in tort. See Burch v. Durham Pontiac Cadillac, Inc., 564 So.2d 380, 383 (La. App. 1st Cir.1990) ("[t]o knowingly sell a redhibitorily defective product, which knowledge is imputed to a manufacturer... is to do a tortious act.") In Burch we followed the reasoning of Philippe v. Browning Arms Co., 395 So.2d 310 (La. 1981) (on rehearing), which recognized the interplay between LSA-C.C. art. 2545 and LSA-C.C. art. 2315 and 2316, concluding that when personal injury results from a defective product, the manufacturer's duty is circumscribed by the codal articles of sale, but these articles expand rather than contract the duty because not only is the manufacturer responsible for return of the purchase price, it is also responsible for damages and attorney fees. LSA-C.C. art. 2545.
In Lafleur v. John Deere Co., 491 So.2d 624, 630 (La.1986), the court discussed the distinction between the "normal breach of contract not involving delictual conduct" and the breach of contract involving "delictual as well as contractual elements." Lafleur was essentially a redhibition case, involving certain farm machinery manufactured by John Deere Company which was proven not fit for its intended use. Plaintiff suffered disastrous crop losses as a result of the defective machinery resulting in inability to satisfy his farm loans. The case was decided on the failure to prove mental anguish damages. The court, however, discussed the distinction between the unreasonably dangerous product and the product, as at bar, unfit for its intended use, noting that the latter may nevertheless implicate delictual conduct. The court then stated that the only difference between a Lafleur product (unfit for its intended use) and an unreasonably dangerous product, is the absence of personal injury damages. Lafleur, 491 So.2d at 630 ("[t]he only difference between this case and those like Weber v. Fidelity & Casualty Ins. Co., [259 La. 599,] 250 So.2d 754 (1971), and Chappuis [v. Sears Roebuck and Company, 358 So.2d 926 (La.1978)] *205 supra., is that here personal injury damages are not involved").
Sparks v. Tulane Medical Center, 546 So.2d 138 (La.1989), recognized that the distinction between physical and mental injury can be obscure, and may be eliminated altogether by proof of accompanying physical or physiological changes. Sparks, 546 So.2d at 147 n. 6 (interpreting the term "personal injury" as defined restrictively in LSA-R.S. 23:1021 to include "only injuries by violence to the physical structure of the body ..."). In essence, whether damages are "physical" or "mental," is a matter of proof.[2]
If plaintiffs herein had been struck by a falling piece of plaster or light fixture due to structural damage caused by the defective slab, the appropriateness of mental anguish damages would be a question of fact; we think whether the apprehension of injury due to the very same defects, arguably making these condominium units unreasonably dangerous, as well as unfit for intended use, implicates tortious conduct is more properly a question of proximate cause than a question of law. The significance of the "delictual aspect" of the defect, Lafleur, 491 So.2d at 628 n. 3, is a question of fact.
We observe additionally that whether the respective purchases of the condominium units can be shown to have had as a principal object the gratification of some non-pecuniary interest, LSA-C.C. art. 1998, which has been suggested to include "personal comfort or any other kind of satisfaction of that order," Hostetler v. W. Gray & Co., 523 So.2d 1359, 1366 (La.App. 2d Cir.), writs denied, 531 So.2d 470, 471 (La.1988) (quoting Litvinoff, Moral Damages, 38 La. L.Rev. 1, 8 (1977)), is also a matter of proof, and therefore a question of fact. Based upon the record before us, we find an error of law as to the dismissal of plaintiffs' claims for damages for mental anguish and inconvenience and reverse the summary judgment to that extent.
Hodges argues that exclusion (n) is not applicable to any of its liability due to the defects because the condominium units were not "products" within the meaning of the policy and, alternatively, that exclusion (n) is modified by the language of exclusion (a), which excludes "liability assumed by the Insured under any contract or agreement except an incidental contract...." Hodges reasons that "incidental contract" is defined expansively in the "Broad Form" endorsement as "any oral or written contract or agreement relating to the conduct of the named insured's business." While we agree that this definition of "incidental contract" is quite broad, what Hodges' reasoning fails to consider is that exclusion (a) is exactly that, an exclusion, and if coverage for Hodges' liability is arguably excepted from exclusion (a), it is, nevertheless, based upon the pleadings and the documents in the record, within the scope of exclusion (n). Plaintiffs have alleged that Hodges was a manufacturer, and Hodges' answer admitted its "status as alleged" in plaintiffs' petition. The summary judgment dismissing plaintiffs' claims against Travelers for return of the purchase price and cost of improvements is correct.
For reasons expressed herein, the judgment of the trial court is reversed in part and affirmed in part, and the matter is remanded for further proceedings consistent herewith. Costs of the appeal are assessed to Travelers and Hodges equally.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[1] We note plaintiffs assert Hodges' liability on the basis of its status as "manufacturer of the units."
[2] It is noted that the sales at bar occurred prior to the effective date of the "Louisiana Products Liability Act," LSA-R.S. 9:2800.51-2800.59. See Hostetler v. W. Gray & Co., 523 So.2d 1359, 1364 (La.App. 2d Cir.), writs denied, 531 So.2d 470 (La.1988) ("[t]he law in existence when a contract is made becomes a part of that contract as though expressly written into the agreement") (citations omitted).