708 So.2d 531 (1998)
Ken and Penny TAYLOR, Plaintiffs-Appellees,
v.
Tom BURTON and Charles Burton, d/b/a B & B Holmes, Defendants-Appellants.
No. 97-1348.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
*532 David LeRoy Hoskins, Lake Charles, for Ken and Penny Taylor.
Jack W. Caskey, Lake Charles, for Tom Burton and Charles Burton d/b/a B & B Holmes.
Before DOUCET, C.J., and COOKS and WOODARD, JJ.
DOUCET, Chief Judge.
Defendants appeal a net judgment of $19,300.15[1], awarded to Plaintiffs in connection with a dispute over the construction of a house Plaintiffs had, at least, partially built by Defendants. We affirm the judgment of the trial court.

FACTS
On July 29, 1993, Plaintiffs, Ken and Penelope (Penny) Taylor, accepted a proposal from Defendants, two brothers, Tom and Charles Burton, d/b/a B & B Homes, for the construction of a new house on Caesar's Court in Moss Bluff.
Sometime after the completion of the house, Plaintiffs noticed a number of defects in its construction. Plaintiffs' major complaint involved a structural defect, a sagging garage beam which spanned a distance of some thirty-three feet. The beam had originally been suspended from the roof frame by a number of "W" braces. The braces pulled loose and the beam sagged. Tom Burton testified that he had warned the Plaintiffs that a laminated beam was needed for the thirty-three foot span, but Plaintiffs refused to pay the approximate $900.00 cost for this type of beam, so he went with the next best thing. Plaintiffs denied ever being consulted about such a beam. Both parties agreed that Plaintiffs did not want a post to support the span.
The second major area of contention involved the interior of the house. Plaintiffs complained of misaligned doors, ill-fitting molding and unsatisfactory floating of some sheetrock, i.e., cracking. Defendants admitted liability for some of these defects, but claimed subcontractors were responsible for others.
The third major group of complaints centered on vinyl work on the exterior of Plaintiffs' house. They complained of misaligned and wavy soffit and fascia installation and the use of mortar rather than "J" molding where the vinyl abutted the brick. Defendants argued that, as in the case of the laminated beam, Plaintiffs refused to pay for "J" channel molding and chose inexpensive vinyl, which added to their problems.
The other defect, which had already been repaired via an insurance claim, was for damages *533 occasioned by a nail being driven through a baseboard into a hot water pipe. At the opening of the trial, all parties stipulated that State Farm Fire and Casualty Company was due $1,792.12 of the $2,2292.12 cost of the repairs necessitated by the punctured pipe.
Finally, Plaintiffs sought nonpecuniary damages for aggravation, embarrassment and mental distress.
Mr. Russell Stutes, a licensed general contractor, testified as a construction expert for Plaintiffs at trial. He went over the defects in detail and arrived at the following figures as the costs to make the various repairs necessitated by the defects:

Structural defect(s) $7,500.00
Vinyl, soffit and fascia defects $7,000.00 and
Interior defects $2,500.00

Defendants noted that Plaintiffs had received much lower bids to repair the same defects from John L. Hartman Contractors, Inc. However, Mr. Hartman was not called to testify by either side at trial.
Both Ken and Penny Taylor testified that this was the first house the couple had built. They stated that the house in which they had been living was cramped, and they had been looking forward to entertaining family and friends in their new house. They further stated that their children were also looking forward to having get-togethers at the new house with their friends. The Taylors also testified that because of the obvious defects they were embarrassed to have friends over. Penny Taylor stated that the day the garage ceiling sagged, a scheduled family function had to be canceled because they were afraid of possible danger to family members.

LAW AND DISCUSSION
The proposal executed July 29, 1993, which is the linchpin of this case, is made up of two pages. Page one reads as follows:

New residence constructed on owners' lot in
____________.
All # 2 or better building materials on 30.00 # concrete
 slab.
Allowances:
 Flooring $16.00 / yd.
 Lighting $700.00
 Appliances $1100.00
 Cabinet doors and hardware per owners specstandard.
 Total Sq. ft.3435
 Total Price $113,355.00
Driveway included.

Page two of the proposal states the following:
Carpenter labor to completion of new residence.
Includes forming, framing, roofing, cabinet, trim, and finish labor.
Also includes subcontract contracts for all needed items to complete the turnkey job on an advantageous to the owner basis.
Price per square foot is $7.10 on total slab area.
Driveway and patio will be included on bid but not on total area.
The question before the trial court was whether the proposal indicated B & B was acting as the general contractor for the project or whether B & B was merely a carpentry contractor. Plaintiffs argued B & B was acting as their general contractor on a turnkey project and, thus, was liable for all defects in workmanship. B & B argued that it had only contracted to do carpentry work and that the sentence "Also includes subcontract contracts for all needed items to complete the turnkey job on an advantageous to the owner basis" was included because B & B agreed to help Plaintiffs find the necessary subcontractors to complete the house to a turnkey status.
The law concerning the interpretation of contracts is well settled in Louisiana. In Adams v. Franchise Finance Corp. of America, 96-855, p. 8 (La.App. 3 Cir. 2/5/97); 689 So.2d 572, 576, writ denied, 97-0604 (La.4/18/97); 692 So.2d 456, this court stated:
The interpretation of a contract is the determination of the common intent of the parties. La.Civ.Code art. 2045. When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made by the courts in search of the parties' intent. La. Civ.Code art. 2046. When the language of a contract is clear and unambiguous, a court must interpret the contract solely by reference to the four corners of the document. Woolf & Magee v. Hughes, 95-863 (La.App. 3 Cir. 12/6/95); 666 So.2d 1128, writ denied, 96-0073 (La.3/15/96); 669 So.2d 427. "The contract is the law between the parties, and no further interpretation may be made in search of the parties' intent when the words of the contract are clear, explicit and lead to no *534 absurd consequences." Id. at p. 5; at 1131. Whether the terms of a contract are ambiguous is a question of law. Borden Inc. v. Gulf States Utilities Co., 543 So.2d 924 (La.App. 1 Cir.), writ denied, 545 So.2d 1041 (La.1989).
Recently, the Louisiana Supreme Court stated the following:
Although parol evidence is inadmissible to vary the terms of a written contract, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087 (La.1981).
McCarroll v. McCarroll, 96-C-2700, p. 12 (La.10/21/97); 701 So.2d 1280, 1286.
In the case sub judice, the trial judge found that the contract was ambiguous. Accordingly, she turned to the testimony of the parties and their actions, under the contract, to determine their actual intent. The trial judge concluded that, in this case, the Burtons were acting as more than mere carpenters, but as less than general contractors. The Burtons had chosen some of the subcontractors and, on some occasions, had paid subcontractors. However, their per square foot charge to the Taylors was, according to Plaintiffs own witness, Russell Stutes, far below that which a general contractor would have charged. She noted that the Taylors had obtained the necessary permits and, for the most part, paid the subcontractors. Thus, she determined that the Burtons were liable for any damage which would be considered carpentry work, or which was done or controlled by them, even if not considered purely carpentry work. She did not hold Defendants liable for the sheetrock defects since testimony established that Ken Taylor had chosen and paid the subcontractor who finished the sheetrock.
The trial court's factual findings are accorded great deference. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La.1987). If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840 (La. 1989). When a factfinder's determination is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be clearly wrong or manifestly erroneous. Rosell, supra.

Stonecipher v. Mitchell, 26,575, p. 2 (La.App. 2 Cir. 5/10/95); 655 So.2d 1381, 1384. Accordingly, we agree with the trial judge.
The trial judge accepted Mr. Stutes' estimates of the costs necessary to repair the various items of damage to Plaintiffs' house. She, however, reduced the estimated cost to repair the interior defects by $500.00 because she had not found Defendants liable for the sheetrock defects.
Defendants argue that the court should have accepted the lower bid of John L. Hartman Contractors, Inc. as the cost to repair the damages. We find no merit to this argument.
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly *535 based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989) (citations omitted) (footnote omitted).
Finally, Defendants argue that the trial judge erred in awarding nonpecuniary damages. The award of such damages is governed by La.Civ.Code arts. 1998 and 1999. Those articles read as follows:
Art. 1998. Damages for nonpecuniary loss
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
* * * * * *
Art. 1999. Assessment of damages left to the court
When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages.
The Second Circuit, with which we agree, addressed the interpretation and application of the preceding two articles in Stonecipher, 26,575 at pp. 2-4; 655 So.2d at 1384-85 (footnote omitted), wherein the court stated:
On appeal, Mitchell argues that nonpecuniary damages are not available in suits arising from contracts to design and build a residence and, in the alternative, that Mitchell did not know and could not have known that Stonecipher's intellectual enjoyment was a primary cause of the contract. Stonecipher appeals the amount of the pecuniary damages, claiming that they are insufficient.
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss. LSA-C.C. Art. 1998. Thus, if the obligee can show that he intended to gratify a significant nonpecuniary interest by way of the contract, and the nature of the contract supports his contention, and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, then nonpecuniary damages may be recovered. See, Young v. Ford Motor Co., Inc., 595 So.2d 1123 (La.1992).
Counsel for Mitchell urges that Ostrowe v. Darensbourg, 377 So.2d 1201 (La.1979), stands for the proposition that nonpecuniary damages are not available in suits arising from a breach of contract to build a residence and that Ostrowe controls. We disagree. In Ostrowe the supreme court stated, "In the instant case we hold that the obvious inference to be drawn from the limited facts available in this record is that the principal object of the contract, as with most contracts to construct dwellings, was to build a structure to be used as a residence by the plaintiffs." Ostrowe, supra, at 1203. This language, in our opinion, clearly limits the holding to the facts of that case. We also note that the court in Ostrowe was interpreting LSA-C.C. Art. 1934, the predecessor of LSA-C.C. Art. 1998. While the court in Ostrowe referred to the "principal object" of the contract, in light of the language of LSA-C.C. Art. 1998, we understand the current law to be that the obligee's nonpecuniary interest need only be a "significant" object or cause of the contract in order for nonpecuniary damages to be recoverable. Young, supra.

Whether the gratification of some nonpecuniary interest is the principal object of a contract is a question of fact. Johnston v. Norcondo, 572 So.2d 203 (La.App. 1st Cir.1990), writ denied, 577 So.2d 13 (La. 1991); Broom v. Leebron & Robinson *536 Rent-A-Car, 626 So.2d 1212 (La.App. 2d Cir.1993). When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of those damages. LSA-C.C. Art. 1999.
The trial judge, finding that both Plaintiffs had suffered "aggravation and mental distress" due to the defects in their house, found the Defendants liable for nonpecuniary damages. She awarded Penny Taylor $3,000.00 and Ken Taylor $5,000.00 for these damages. We find no error in her determinations of liability or quantum.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are taxed against Appellants, Tom Burton and Charles Burton, d/b/a/ B & B Homes.
AFFIRMED.
NOTES
[1] Total damages were found to be $26,792.12. However, it was stipulated that intervenor, State Farm was due $1,792.12 and that Plaintiffs still owed Defendants $5,699.85.