Judge Terrel J. Broussard, Pro Tempore | j Defendant-Appellant, Francisco Estrada-Belli, appeals the judgment of the Orleans Parish Civil District Court. dated October 7, 2016, in favor of Plaintiff-Ap-pellee, Nina D. Neivens. Appellant asserts three (3) assignments of error: 1. The district court erred in holding that the prenuptial agreement is valid and enforceable in Louisiana, and subsequently dismissing Appellant’s demand for partition of community property and granting Appellee’s rule to enforce the prenuptial agreement and request for attorney’s fees and costs. 2. The district court erred by failing to apply the conflict of laws principles prescribed by the Louisiana Civil Code, thereby enforcing the terms of the prenuptial agreement and dismissing Appellant’s demand for partition of community property, demand for final spousal support, and granting Appellant’s attorney’s fees and costs. 3. The district court erred in dismissing Appellant’s Motion for Continuance of Interim Spousal Support and terminating Appellant’s interim spousal support retroactive to the date of divorce while a demand for final spousal support was pending. For the reasons that follow, ■ the trial court’s ruling is affirmed. FACTUAL AND PROCEDURAL BACKGROUND: On April 8, 2015, Appellee filed in the district court a “Petition for Divorce Pursuant to La.C[iv].C[ode]. Art. 102 (With Minor Children)”. In the petition, Appellee alleged, “The parties are separate in property, pursuant to a Prenuptial Agreement which they signed shortly before their marriage in 2004.” Also, on April 8, 2015, a Consent Judgment was signed by the district court. As part of the judgment, Ap-pellee was ordered to pay interim spousal support in the amount of $2,300.00 per month beginning April 1, 2015. The order provided the support “shall terminate by operation of law or pursuant to further agreement of the parties.” (emphasis added.) On March 8, 2016, Appellant filed an “Answer and Reconventional Demand”. In answering the petition, Appellant denied the parties agreed to a separate property regime stating in pertinent part: “a community property regime exits between them, and Defendant specifically denies the validity and legal enforceability of any purported Prenuptial Agreement signed before the marriage.” Additionally, Appellant sought to partition the community property, to continue interim spousal support, and to be awarded final spousal support. Subsequently, on May 4, 2016, the Judgment of Divorce was rendered. In response to Appellant’s request to partition the community property, Appel-lee asserted, as an .affirmative defense, the existence of a prenuptial agreement. Additionally, Appellee moved to enforce the prenuptial agreement, for termination of spousal support, and to be awarded attorney’s fees. The district court ordered - a rule to show cause, and a hearing was held on September 26, 2016. Appellant also filed in’the district court a “Supplemental and Amending Recoven-tional Demand”. One of his requests was to continue interim spousal support due to his change in employment circumstances. A transcript of the hearing held on September 26, 2016, reveals that Appellant was not present, and his attorney moved for a continuance. Appellant’s attorney informed the .court he did not know “the circumstances of his. absence.” The trial court denied the continuance, and the hearing proceeded in the-absence of the Appellant. . - , | a At the hearing, Appellee testified that she and Appellant signed,- in the presence of a notary, a prenuptial agreement' on February 28, 2004, in the State of Tennessee. Appellee specifically identified the prenuptial agreement signed by her and Appellant.[1] Appellee testified she and Appellant were married in August, 2004 in Guatemala.- She confirmed that she and Appellant entered into a “separate property marriage,” which was specifically referenced during the marriage ceremony. Counsel for Appellant conceded Appellee’s requests for admissions had not been answered by Appellant. Consequently, the facts contained in the requests for admissions were deemed admitted. Counsel for Appellee explained that the requests for admissions sought the admission or denial of the authenticity of the prenuptial agreement as well as the admission of the validity of the Appellant’s signature on the agreement. Additionally, Appellee testified the couple established their domicile in New Orleans in July 2012.[2] They resided in New Orleans until their marriage ended May 4, 2016, when the judgment of divorce was rendered.[3] Appellant’s attorney did not present any witnesses or introduce.any evidence that traversed the representation of the Appellee regarding the prenuptial agreement, or the establishment of a matrimonial regime by the parties in Louisiana. LThe trial court ruled in favor of Appel-lee'and gave oral and written reasons for its judgment. The trial court concluded that the prenuptial -agreement was valid and enforceable. Additionally, the court dismissed Appellant’s requests for partition of community property, for final spousal support, and for continued payment of interim spousal support. The judgment. terminated interim spousal support retroactive to May 4, 2016, and attorney’s fees and cost wex-e awarded to Appellee. Following the trial court’s ruling, Appellant filed a Motion for New Trial, and Appellee petitioned for dismissal of the motion which was granted by the district court. STANDARD OF REVIEW: The court will conduct a de novo review pursuant to the standard of appellate review provided for by the jurisprudence of this circuit. In Felix v. Safeway Ins. Co., 15-0701 (La.App. 4 Cir. 12/16/15), 183 So.3d 627, 631, this court addressed the standard of review when only legal issues' are to be determined explaining in pertinent part: Likewise, “[i]n a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must apply the de novo standard of review, under which the trial, court’s legal conclusions are not entitled to deference.” TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Parish of Lafourche, 10-0685, p. 8 (La. App. 1 Cir. 12/8/10), 52 So.3d 1103, 1108 (citing Kevin Associates, L.L.C. v. Crawford, 03-0211, p. 15 (La. 1/30/04), 865 So.2d 34, 43); see also Benson v. ABC Ins. Co., 12-517, 12-385, p. 2 (La. App. 3 Cir. 11/7/12), 106 So.3d 143, 145, writ denied, 12-2650 (La. 2/8/13), 108 So.3d 86. In this case, there are no material facts in dispute for the following reasons: 1) Appellant failed to appear at the hearing, and Appellant’s attorney -did not present any witnesses or evidence to rebut Appellee’s factual assertions; and 2) Appellant, Rby failing to answer the requests for admissions, admitted he signed the prenuptial agreement. Under such circumstance, a de novo review is appropriate. A similar circumstance was presented in Barber v. Barber, 09-0780, (La.App. 1 Cir. 5/7/10), 38 So.3d 1046. There a couple entered into a matrimonial agreement, under Louisiana law, prior to their marriage. In addressing the validity of the agreement, the court held in pertinent part: When parties are bound by a valid contract and material facts are not in conflict, the contract’s application to the case is a matter of law. An appellate review that is not founded upon any factual findings made at the trial court level, but is based upon an independent review and analysis of the contract within the four corners of the document, is riot subject to the manifest error rule of law. In such eases, appellate review is simply .whether the trial court was legally correct. Id. at p. 4, 38 So.3d at 1049 (citations omitted). Accordingly, this court affirms the decision of the trial court as discussed below. BURDEN OF PROOF: The Appellee had the burden of proof in this case. In Ross v. Ross, 02-2984, p. 9 (La. 10/21/03), 857 So.2d 384, 390, the court set forth the burden of proof when a spouse is asserting a separate property regime explaining in pertinent part: The Code also provides 'that things in the possession of a spouse during the existence of a regime of acquets and gains are presumed to be community. La.C[iv].C[ode]. art. 2340. However, either spouse may rebut this presumption. La.C[iv].C[ode]. art. 2340. The spouse seeking to rebut the presumption bears the burden of proving that the property is separate in nature. Knighten v. Knighten, 00-1662 (La. App. 1 Cir. 9/28/01), 809 So.2d 324, writ denied, 01-2846 (La. 1/4/02), 805 So.2d 207. In Talbot v. Talbot, 03-0814, p. 12 (La. 12/12/03), 864 So.2d 590, 600, the court held the spouse rebutting the presumption must do so by a preponderance of the evidence. Thus, Appellee was required to prove by a preponderance of- evidence | flthat a separate property regime existed between her and Appellant. As will be discussed below, Appellee carried that burden by a preponderance of evidence. ASSIGNMENTS OF ERROR NOS. 1 arid 2: ' Since assignments of error one and two are interrelated, théy will be addressed in tandem. It should be noted ab initio, that Appellant does not contest the validity of the agreement under Tennessee law. Rather, he'challenges the validity and enforceability" of the agreement under Louisiana law, and he asserts the agreement has no effect on their matrimonial regime that was established when the parties moved to Louisiana. CONFLICT OF LAWS: Appellant asserts the district court failed to apply the conflict of laws principles prescribed by the Louisiana Civil Code. The trial court ruled the prenuptial agreement was valid and enforceable in the State of Louisiana and applied Tennessee law. Written reasons are not to be substituted for the words in the actual judgment rendered by the court. However, the written reasons of the trial court illustrate a clear adjudication of the facts and law at issue. The trial court, when considering whether the prenuptial agreement, which was legally executed according to the laws of Tennessee, was valid and enforceable in the Louisiana domestic proceeding, responded as follows: In short, the answer is yes. The prenuptial agreement is valid and enforceable. Considering Louisiana Civil Code, Book IV, Conflicts of Law, and the express terms of the agreement, the Court applies Tennessee Law toward its interpretation. Pursuant to Tennessee Code Annotated § 36-3-501: [a] prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage that is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is |7determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. Tenn. Code Ann. § 36-3-501 (emphasis supplied). In determining that Louisiana Law permits the application of Tennessee Law as the clear, voluntary and intelligent will of the party, the court opined as follows (emphasis added): The Court finds the parties intentionally drafted the prenuptial agreement freely, knowledgeably, in good faith, and with the assistance of independent counsel. In fact, Paragraph 15 of the agreement reads, “[t]his Agreement has been entered into [by] the parties in accordance with [Tennessee law], and has been entered into freely knowledgeably and in good faith ... This Agreement shall be interpreted in accordance with the substantive laws of the State of Tennessee, it being the intention of the parties that any court having appropriate jurisdiction shall interpret this Agreement according to the applicable laws of Tennessee which would be most advantageous in giving full force and effect to all of the provisions of this Agreement”. Prenuptial Agreement, Pg. 9. Based on the four corners of the agreement, which both parties signed and initialed on February 28, 2004, in front of a notary, the parties voluntarily agreed to be bound by its terms, which would specifically be interpreted under the laws of Tennessee. Under La.Civ.Code arts. 3515 and 3537, the court looks to the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. The jurisprudence of this state establishes that articles 3515 and 3537 are intended to be read together, (ie. inpari materiae). Comment (c) to article 3537, supports such an application. Additionally, Montgomery v. Farmers Texas Cty. Ins. Co., 34,628 (La.App. 2 Cir. 5/9/01), 786 So.2d 306, grounds this application in our jurisprudence. Comment (a) of article 3537 establishes that this article gives further insight on the choice of law provisions stating: IsThis Article establishes the general approach for selecting the law applicable tconventional obligations. Being more general, this Article will be superseded by the more specific Articles contained in this Title. Articles 3538 and 3539, infra, are more specific with regard to issues of form and capacity respectively. Both Articles contain language that regulates more specifically their relationship to this Article. (See comment (e) under Article 3538 and comment (b) under Article 3539, infra). The same is true with regard to Article 3540. See comments (d) and (f) under Article 3540, infra. In essence, this Article applies in the absence of an effective choice of law by the parties .... There was a specific choice of law by the parties that did offend Louisiana Law. The prenuptial agreement specified Tennessee Law would apply. Louisiana Civil Code Article 3540 permits the law chosen by the parties to be given preference by Louisiana Courts so long as doing so would not be offensive to laws of the state that would otherwise be applicable. Specifically, the article provides: “All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.” Id. The same result was reached in this circuit in English Turn Prop. Owner’s Ass’n, Inc. v. Short, 16-0460, p. 8 (La.App. 4 Cir. 11/30/16), 204 So.3d 672, 679 (citing Landis Const. Co. v. St. Bernard Par., 14-0096, p. 5 (La.App. 4 Cir. 10/22/14), 151 So.3d 959, 962, writ denied, 14-2451 (La. 2/13/15), 159 So.3d 467), in which this court held that: “It is a well-settled rule that, when the words of a contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine. the parties’ true intent.” We find, as did the trial court, that the prenuptial agreement is clear and unambiguous; thus, the trial court did not err by upholding the validity of the choice of law provision in the prenuptial agreement. Once a choice of law provision is determined, this court examines whether lathe application of state law to the prenuptial agreement would be against public policy, the statutory framework, and established jurisprudence. In making .this determination, this court relies on the method outlined in Mobil Expl. & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A), 01-2219 (La.App. 1 Cir. 11/20/02), 837 So.2d 11, writ denied, 03-0418 (La. 4/21/03), 841 So.2d 805, and writs denied, 03-417, 03-427, 03-438 (La.5/16/03), 843 So.2d 1129. There, the court set forth this legal principle and explained the apportionment of the burden of proof: It is well established that where the parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written. La.,C[iv].C[ode]. art. 3540 and its Revision Comments. See also Continental Eagle Corp. v. Tanner & Co. Ginning, 95-295, pp. 2-3 (La.App. 3 Cir. 10/4/95), 663 So.2d 204, 206. See also Francis v. Travelers Ins. Co., 581 So.2d 1036, 1041 (La.App. 1 Cir.), writs denied, 588 So.2d 1114, 1121 (La.1991). A choice of law provision in a contract is presumed valid until it is proved invalid. The party seeking to prove such a provision is invalid bears the burden of proof. Continental Eagle Corp. v. Tanner & Co. Ginning, 95-295 at p.3, 663 So.2d at 206. Id. pp. 38-39, 837 So.3d at 42-43. In this case, once the Appellee proved the existence of the prenuptial agreement and that the agreement was governed by Tennessee Law, the burden shifted to the Appellant to prove that there are Louisiana statutory ór' jurisprudential impediments or' a strong Louisiana public policy that justifies the refusal to apply the contract as written. The success of the efforts of the Appellant to carry his burdeif of proof will be discussed below. hn The Appellant did not prove the existence of a public policy, jurisprudential or statutory impediment to the application of Tennessee Law .to a prenuptial agreement by a Louisiana Court. Appellant asserts that the legislature intended to make it onerous to waive one’s community property rights in Louisiana. He contends that procedural hurdles were enacted to ensure the parties considered the consequences of entering a matrimonial agreement.[4] There is no question that the Louisiana Civil Code prescribes both formal and substantive law mechanisms for the implementation of matrimonial regimes. However, as will be discussed below, the Louisiana Civil Codé was written and enacted as an interrelated, complete body of private, substantive law to be read in pari materia. It is intended to be “a self-sufficient and logically interdependent enactment, to be construed as a whole .... ” Albert Tate, Jr., Techniques of Judicial Interpretation in Louisiana, 22 La. L. Rev. 727, 728 (1961-62). Therefore, any review of these articles of the Civil Code requires a systematic and logical analysis of alb-the legislative enactments that are available to resolve a particular question of law. Appellant contends that upon establishing their domicile in Louisiana in 2012, the legal regime of community of acquets and gains applied to the couple. In support the Appellant cites La.Civ.Code art. 2334, and Martin v. Martin, 09-1960 (La.App. 1 Cir. 5/26/10), 38 So.3d 1174. In Martin, the court applied the principles of article 2334 and found the community property regime applied to a couple married in Mississippi and who later moved to Louisiana.[5] However, Martin is l^easily distinguishable. It did not involve a couple who married outside of this state, who prior to marriage, entered a prenuptial agreement that contained a choice of law provision] Thus, Martin is not analogous to the matter at hand. Appellant inaccurately asserts he and his wife, in order to preserve the efficacy of' the I ^prenuptial agreement formed in Tennessee, should have entered into a new matrimonial agreement or filed the prenuptial agreement into the public records in the State of Louisiana. In support of his assertion, he seeks refuge in La. Civ.Code art. 2329.[6] The jurisprudence of this state including article 2329 of the Louisiana Civil Code does not deny the legitimacy of prenuptial agreements perfected in another state simply because the parties have not selected a community or separate property regime.[7] It would be pointless to reconstruct the same matrimonial agreement when it was done with the intent of the parties to apply in all states. Additionally, Appellant’s assertion that failure to file the prenuptial agreement in Louisiana renders the agreement inapplicable in Louisiana is neither persuasive nor well founded in the law. No statute in Louisiana requires a party to ñle a prenuptial agreement prepared in this state or in another state in the conveyance records in order to maintain a valid and enforceable agreement between the parties. There is a requirement that in order for a matrimonial agreement to be effective towards third persons as to immoveable property, it must be filed in the conveyance records where the immovable property is located.[8] There.is a preference in Louisiana Law that a spouse living under a matrimonial agreement contracted in another state to continue to be governed by it when they move to Louisiana. Further, La.Civ.Code art. 3537 does not erode this preference, and the provisions of article 2329, allowing out of state couples one year for contracting a separate property regime without court approval, is further evidence of that preference.[9] Thus, this contention is without merit. Appellant argues the prenuptial agreement did not contain specific language to “opt out of the community property of this State (sic).” We find this contention is also without merit. Although Louisiana was not specifically mentioned in the prenuptial agreement, it clearly establishes a separate property regime during the marriage. Additionally, the testimony by Appellee, as well as the plain language of the prenuptial agreement itself, established that the parties intended the agreement to be applicable in any state. It is noteworthy that Appellant1 did not attend the proceedings, and the record is void of any evidence -or testimony to contradict these well-established facts. JQjAppellant’s argument that the agreement is invalid because it was not in authentic form as required, by Louisiana also lacks merit.' Appellee and Appellant signed the agreement in the presence of a notary, but before no witnesses. Appellant supports his position that the prenuptial agreement was defective by citing Shaheen v. Khan, 13-998 (La.App. 5 Cir. 5/21/14), 142 So.3d 257. However, reliance on this case is misplaced. In Shaheen, the parties were wed in a Muslim ceremony in India, and later, they became domiciled in Louisiana. During the divorce, the husband argued that the parties entered into a marriage contract in India that excluded the legal regime of acquets and gains, and that the couple owned no community property. The Fifth Circuit Court of Appeal held there was a community property regime. It noted the contract contained no provision renouncing or modifying the community property regime. Additionally, the court denied the husband’s claim of a separate property regime because there was no evidence the India contract was in the form of an authentic act or act under private signature duly acknowledged by the spouses. While Shaheen may be the law in the Fifth Circuit, this court chooses to distinguish this case as not controlling in this jurisdiction. In Shaheen, the court did not discuss the contents of the alleged matrimonial contract. The court did not determine if the contract made in India was valid and enforceable under the laws of the United States, and if so, was it against Louisiana’s public policy to apply India law. Once the Shaheen court found Louisiana law applied, it addressed the validity of the agreement under Louisiana law.[10] Thus, we find Shaheen is distinguishable from the present case and not 114dispositive of the issues at hand. Furthermore, this court finds the prenuptial agreement in this case was valid under Tennessee Law and can be enforced in Louisiana for the following reasons: 1) Appellant offered no Tennessee law requiring the parties to sign a prenuptial agreement in the presence of a notary and two witnesses. See Tenn. Code Ann. § 36-3-501; 2) Appellant conceded the agreement was valid and enforceable under Tennessee law; 3) A review of the prenuptial agreement indicates Appellant and Appellee signed the document in the presence of a notary and acknowledged it was their signatures in the presence of the notary; 4) Though there were no witnesses’ signatures on the prenuptial agreement, the Appellant admitted the authenticity of all signatures and waived his ability to challenge the prenuptial agreement by failing to answer the requests for admission;[11] and 5) The trial court found both Appellant and Appellee signed and initialed the agreement in front of a notary. Accordingly, this court finds that Appellant failed to prove that the prenuptial agreement prepared and governed by Tennessee Law was defective as to form under Louisiana Law. We find Appellant failed to carry his burden to establish the choice of law provision should not be applied because of the existence of Louisiana statutory or jurisprudential impediments to the contrary. The Appellant did not prove Louisiana’s public policy prevented application of Tennessee Law to the prenuptial agreement. Appellant is correct in that Louisiana has a strong public policy in favor of the community property regime. However, Louisiana also favors a separate property regime. In Robinson v. Robinson, 99-3097, p. 6 (La. 1/17/01), 778 So.2d 1105, 1113, the court explained Louisiana’s principles of community property and separate property stating in pertinent part: Under Louisiana law, property is characterized as either community or separate. La.Civ.Code art. 2335. Property acquired during the existence of the community is presumed to be community, but either spouse may rebut the presumption and prove the separate nature of said property. La.Civ.Code art. 2340. The classification of property as separate or community is fixed at the time of its acquisition. Smith v. Smith, 95-0913 (La.App. 1st Cir. 12/20/96), 685 So.2d 649. Prenuptial agreements are not against public policy in Louisiana. Louisiana Law allows contracts before or during marriage to establish a separate property regime. Therefore, separate property is not against public policy and exists as one of the legal means of owning property during marriage in this state. In Sarpy v. Sarpy, 323 So.2d 851, 853 (La.App. 4 Cir. 1975), writ denied, 328 So.2d 166 (La. 1976), this court held there was no public policy against a marriage contract abrogating the existence of a community of ac-quets and gains. Appellee does not contest the provision in the prenuptial agreement waiving interim spousal support is against Louisiana’s public policy, but she urges the clause regarding waiver of interim spousal support is severable from the contract.[12] Paragraph 7 of the prenuptial agreement provided “that each party waives, release and relinquishes any and all right to maintenance alimony or support, both temporary and permanent.” Paragraph 20 of the agreement contained a severability clause.[13] lujThe trial court did not specifically rule on this issue. However,. Appellant does not request relief from the trial court’s failure to rule on this issue. Nor does he seek to invalidate the prenuptial agreement because of the interim spousal support clause. Nevertheless, in accordance with this Court’s de novo review, we find that the inclusion of the waiver of interim spousal support in the agreement, which is against Louisiana’s public policy, does not affect the validity of the prenuptial agreement.[14] Although not directly on point, Barber, 38 So.3d 1046, lends guidance on this issue. In Barber, the couple’s Louisiana -matrimonial agreement waived interim and final spousal support. The appellate court held the waiver of interim spousal support contained in the agreement was against public policy and must be stricken from the agreement, but it found the entire paragraph, which included final spousal support, need not be stricken. The court stated: Although the agreement regarding interim spousal support and final spousal support are in the same sentence, they are two distinct provisions with different interests and different requirements. It does not appear that the portion of the sentence regarding interim support is so entangled .,. with the rest of the sentence that it cannot be deleted without ■striking the entire paragraph. Id. p. 6, 38 So.3d at 1050 (footnote omitted). Likewise in this case, the waiver of interim spousal support can be stricken from the agreement without effecting the agreement. The inclusion of the waiver of interim spouse support in the prenuptial agreement does not prohibit the application of Tennessee Law.[15] We find that Appellant failed to prove that public policy considerations rendered the prenuptial agreement, including the spousal support provision, void ' as 1 ^against Louisiana public policy. DISMISSAL OF PARTITION OF COMMUNITY PROPERTY: -Having determined that the prenuptial agreement is valid and enforceable under Louisiana and that Tennessee Law applies, this' court also finds that the dismissal of Appellant’s demand -for partition of community property was appropriate and justified. Though the prenuptial agreement provided for a sepai’ate property regime, there was no community property to partition. Additionally, Appellant presented no witnesses or evidence that the parties acquired community property after moving to ' Louisiana. Since Louisiana courts are courts of record, Appellant is left with the fruits of his choice not to participate in litigation and not to protect his interest.[16] Accordingly,’ the decision of the trial court to dismiss the Appellant’s claim- for the partition of the community property is affirmed. DISMISSAL OF DEMAND FOR FINAL SUPPOSAL SUPPORT: ' In as much as the parties expressly waived final spousal support, the judgment-of the trial court to dismiss the claim for final spousal support is affirmed. See McAlpine v. McAlpine, 94-1594, p. 14 (La. 9/5/96), 679 So.2d 85, 92 (holding waiver of final spousal support was not per se against Louisiana’s public policy). AWARD OF ATTORNEY’S FEES AND COSTS: The trial court properly awarded Appellee attorney’s fee and costs incurred in the action to enforce the prenuptial agreement. The prenuptial agreement provided the prevailing party shall be entitled to recover reasonable attorney’s fees 11sto be fixed by the Court. In English Turn Prop. Owner’s Ass’n, Inc., 16-0460, p. 17, 204 So.3d at 684 (quoting KeyClick Outsourcing, Inc. v. Ochsner Health Plan, Inc., 11-0598, p. 11 (La.App, 4 Cir. 3/14/12), 89 So.3d 1207, 1213), this court stated, “It is axiomatic that „attorneys’ fees are not recoverable unless expressly authorized by statute or by a contract between the parties.’ ” Based, upon the express language of the contract, the trial court awarded attorney’s fees and costs to Appellee, the victor in the litigation. Appellant failed to cite any statute or jurisprudence in support of his argument and failed to show that such a provision is against Louisiana’s public policy. Accordingly, we find assignments of error numbers one and two lack merit and are denied. ASSIGNMENT OF ERROR NO. 3: We find the district court did not err in dismissing Appellant’s claim to continue interim spousal support and in terminating interim spousal support retroactive to the date of the divorce while a demand for final spousal support was pending. In Hall v. Hall, 08-706 (La.App, 5 Cir. 2/10/09), 4 So.3d 254, writ denied, 09-0812 (La. 5/29/09), 9 So.3d 166, a similar issue was addressed.' Ms. Hall waived final spousal support in the matrimonial agreement. Relying on La. Civ.Cod. art. 113(B), the appellate court held, despite the waiver of final spousal support, that Ms. Hall’s award of interim spousal support would terminate one hundred and: eighty days after the judgment of divorce, instead at the date of- the | ^divorce.[17] This Court declines to follow Hall and finds it distinguishable. In this case, the trial-court-determined the parties expressly waived final spousal support, and no good cause was shown for an extension of interim spousal support. The absence of contradictory evidence by the Appellant confirms this determination. Accordingly, this Court concludes that assignment of error three lacks ’merit and is denied. For the reasons stated above, the judgment of the trial court is affirmed. AFFIRMED . The agreement was admitted into evidence. . Appellant alleged, in his brief to the court', the couple first moved to Louisiana in 2004, for Appellee to complete her. PhD at Tulane University. Appellee countered, in her brief, only she lived here from 2004 to 2006 to complete her PhD, No testimony or evidence was presented at the hearing by either party as to these allegations. . On March 7, 2013, less than one year after moving to New Orleans, Appellee purchased a home located at 4911 St. Charles Avenue, New. Orleans, LA 70115, She paid for the home with her separate funds. The Act of Cash Sale was recorded in the Orleáns Parish Conveyance Office, Appellant appeared and signed the Act as an Intervener, affirming, that: “Ms, Neivens purchased said property with her separate funds, which would remain under her separate administration and control; and, he had no interest in said property.” . Appellant relies on Acurio v. Acurio, 16-1395, pp. 5-6 (La. 5/3/17), 224 So.3d 935, 2017 WL 1709823, p. *3, wherein the court addressed the procedural requirements for a valid matrimonial agreement prepared in Louisiana' and governed by Louisiana Law. . Louisiana Civil Code Article 2334 provides, "The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage," .Louisiana Civil Code Article 2329 provides; Spouses may: enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy. Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding1 by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval. During the first year after moving into and acquiring a domicile in th.is state, spouses may enter into a matrimonial agreement without court approval. .A commentator set forth thoughts on the issue writing: Although it is not explicitly stated in the Civil Code, it appears that spouses living under a matrimonial agreement contracted in another state would continue to be governed by it when they move to Louisiana, Thát was the traditional Louisiana view and probably is still authorized' by Louisiana Civil Code Article 3537'... Indeed, the provision, of Article 2329 allowing out of state couples one year to contract a separate property regime ... without court approval reflects that policy. That provision also seems to assume that such a couple would not have to heretofore contracted such a regime, it would seem to be pointless to r regime if it had existed before, Andrea Carrol & Richard D. Moreno, 16 La. Civ.L Treatise, MATRIMONIAL REGIMES, § 8:11, p. 892-93(4th ed. 2016)(footnote omitted). .. . Louisiana Civil Code Article 2332 provides a matrimonial agreement is effective toward third persons as to immoveable property when filed in the conveyance records where the immovable property is located; however, that is not at issue in this case. . Carrol & Moreno, supra, § 8:11. . See also Lauga v. Lauga, 537 So.2d 758 (La.App. 4 Cir. 1989), where this court applied Louisiana law to a matrimonial agreement entered into by a Louisiana couple prior to the marriage but while the husband was in prison in Kentucky. The opinion does not indicate whether a choice of law provision was contained in the agreement. . Of particular note, one of the requests for admission asked Appellant to admit or deny the authenticity of his signature. . At the hearing, Appellee testified she paid interim spousal support to Appellant despite the waiver in the agreement. . The contract provided, "Severability. In the event that any provision of this Agreement shall be held invalid, unenforceable or void for any reason, the remaining provisions of this Agreement shall not be affected, said provisions being severable.” . See Greater New Orleans Expressway Comm’n v. Olivier, 02-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24, (citations omitted), where the court held, “A judgment and reasons for judgment are two separate and distinct documents. La. C[ode].C[iv], P. art. 1918. Appeals are taken from the judgment, not the written reasons for judgment.” . No action need be taken as interim spousal support, was paid by Appellee. , Appellate courts may not consider documents or facts, including facts set forth in the appellate brief, which were not introduced or testified to in the trial court, Cozzy Spot, LLC v. City of New Orleans, 16-0529 (La.App. 4 Cir. 1/11/17), 209 So.3d 224, 227. . Louisiana Civil Code Article 113(B) provides: “If a claim for final spousal support is pending at the time of the rendition of the judgment of divorce, the interim spousal support award shall thereafter terminate upon rendition of a judgment awarding or denying final spousal support or one hundred eighty days from the rendition of judgment of divorce, whichever occurs first. The obligation to pay interim spousal support may extend beyond one hundred eighty days from the rendition of judgment of divorce, but only for good cause shown.’’