Judge Paula A. Brown
This is a declaratory judgment action arising out of the validity of an Agreement Before Marriage (the "Agreement") entered into by Appellant, David A. Pirner ("Mr. Pirner") and Appellee, Karen L. Brady ("Ms. Brady").[1] Following their marriage, the couple filed for a divorce. In turn, Ms. Brady filed two separate petitions seeking declaratory judgments regarding the Agreement. The district court rendered two separate judgments in favor of Ms. Brady-one on July 29, 2016 and the other on February 6, 2018. Mr. Pirner seeks appellate review of the district court's February 6, 2018 judgment. Ms. Brady filed a motion to dismiss the appeal. For the reasons set forth below, we deny the motion to dismiss appeal and affirm the district court's February 6, 2018 judgment.
FACTS AND PROCEDURAL HISTORY
At the time the Agreement was executed by the couple, Mr. Pirner resided in Minneapolis, Minnesota, and Ms. Brady resided in New Orleans, Louisiana. The *869 Agreement stated that the couple was entering the Agreement "in consideration of their marriage and life together." The Agreement provided in pertinent part:
2. Separate Property to Remain Separate.
2.1 Each of [sic] DAVID and KAREN hereby acknowledges and agrees that all of the assets listed on the attached Schedule A, including all of KAREN'S and DAVID'S copyrights, royalties, and any property acquired by bequest, devise, descent or gift, and the appreciation thereof and the income and proceeds derived therefrom are, and shall remain, the separate property (hereinafter referred to as the "Separate Property") of DAVID and KAREN, as the case may be. Each of [sic] DAVID and KAREN shall keep and retain sole ownership, control and enjoyment of all such property and expectancies. The income, appreciation, and proceeds of such Separate Property derived therefrom, shall remain the Separate Property of DAVID or KAREN, as the case may be, whether or not due to the other's direct or indirect contributions or efforts of others, including DAVID or KAREN, or to inflation or market conditions. At any time, DAVID or KAREN shall be free to sell, exchange, transfer or otherwise dispose of all or any part of his or her Separate Property, as he or she may determine, as effectively as though he or she were unmarried. Upon such sale, exchange, transfer or other disposition, any proceeds or property resulting therefrom, whether maintained in separate accounts or commingled with other property, shall remain his or her Separate Property. Without limiting the foregoing in any way, DAVID and KAREN hereby expressly renounce, waive, relinquish and release any right to claim any Separate Property of the other, or any interest in such property under any equitable distribution, special equity, community property, quasi-community property, dower, curtesy, or similar law or rule of any jurisdiction, domestic or foreign.
2.2 Any property acquired by either or both of the Parties following their date of marriage, excluding any copyrights and royalties from such copyrights and Separate Property as defined in this Agreement, shall be deemed to be Marital Property. Any property, including Separate Property, transferred to the parties jointly, or used to purchase property in joint names shall be Marital Property, unless expressly agreed by DAVID and KAREN otherwise.
2.3 The earnings, other income and future copyrights of each party shall be and remain his or her Separate Property. Neither one will at any time or under any circumstances make a claim against the earnings or other income of the other.
3. Debt.
Neither party shall assume or become responsible for the payment of the other's premarital debts ....
4. Rights Upon Termination of Marriage.
* * *
4.2 In the event an action for termination of the marriage is commenced after the date of the marriage by either DAVID and KAREN or by both of them jointly, then DAVID and KAREN specifically waive any right, claim, or interest to or in real or personal Separate Property that each of them now owns and in property that either of them may hereafter acquire held or owned singly [sic] in the name of either DAVID or KAREN. Neither DAVID nor KAREN shall seek spousal support or temporary *870 spousal support or any award of property, maintenance, "equitable distribution" distributive award, alimony or other order concerning the division of their property. Any Property acquired jointly during the marriage shall be distributed as DAVID and KAREN may agree; and if no agreement has been made previously, or if none can be reached on termination of the marriage, then such jointly owned property shall be distributed equally to DAVID and KAREN.
4.2.1 If, after one full "calendar year", as hereinafter defined, of DAVID and KAREN'S marriage, a court of competent jurisdiction enters a final decree of divorce dissolving DAVID and KAREN'S marriage, from which no further appeal can be taken, then within thirty (30) days of the entry of said decree, DAVID shall pay to KAREN such sum as described in Schedule C annexed hereto. Any payment made in accordance with this provision shall not be designated as a payment which is not includible in income under Section 71 of the Internal Revenue Service Code, or allowable as a deduction under Section 215 of the Internal Revenue Service Code, as permitted. Upon the payment of such sum to KAREN, DAVID shall have no further obligation to pay any maintenance, spousal support or transfer any other property whatsoever to KAREN ....
5. Occupancy of the Existing Premises.
* * *
5.3 DAVID and KAREN are presently the owners of the premises located at 1331 Pine Street, New Orleans, Louisiana 70118 (hereinafter referred to as the "Jointly Owned Premises"). The provisions of this Article 5 shall apply to the Minneapolis Premises, New Orleans Premises and Jointly Owned Premises.
* * *
5.5 KAREN and DAVID agree that upon the occurrence of a Termination Event, the Jointly Owned Premises shall be sold within a reasonable period of time. Upon the sale of the Jointly Owned Premises, DAVID shall be reimbursed for the full down payment he had made in the amount of One Hundred Sixty-Two Thousand Five Hundred and Eight Dollars ($162,508), which was contributed by DAVID towards the purchase of the Jointly Owned Premises. After the deduction of the outstanding mortgage and usual closing costs, the balance of the net proceeds, if any, shall be divided equally between DAVID and KAREN.
The Agreement had a severability clause which provided "[i]f any provision of this Agreement should hereafter be determined to be wholly or partially unenforceable, it shall not affect the validity or enforceability of the balance of this Agreement ...." The Agreement further provided that any dispute regarding the Agreement should be brought in a Minnesota Court and be construed by Minnesota law.
On June 16, 2015, Ms. Brady filed, in the district court, a Petition for Declaratory Judgment (the "First Petition") alleging the Agreement "establishing a regime of separation of property and reservation of fruits and revenues as separate property is invalid and ineffective due to lack of form and lack of filing for registry."[2]
*871 On September 17, 2015, Mr. Pirner filed a Declinatory Exception of Improper Venue as to the First Petition asserting that the parties had agreed, as set forth in the Agreement, that the State of Minnesota would interpret the Agreement. On November 3, 2015, the district court overruled the exception on the ground it was untimely filed. Mr. Pirner did not seek review of the district court's judgment.
On July 29, 2016, a hearing was held on the First Petition, and the district court rendered judgment in favor of Ms. Brady. The July 29, 2016 judgment provided that the portion of the Agreement "purporting to establish a regime of separation of property between the parties" and "to reserve the fruits and revenues of separate property" was invalid as to form; thus, a community of acquets and gains existed between Ms. Brady and Mr. Pirner during their marriage. Mr. Pirner did not seek review of the July 29, 2016 judgment.
On March 28, 2017, Ms. Brady filed, in the district court, a Petition for Declaratory Judgment or Alternatively, to Establish Final Spousal Support (the "Second Petition") requesting a judgment declaring that certain provisions of Agreement were valid and enforceable including Mr. Pirner paying Ms. Brady a sum of $175,000, and the property located at 1331 Pine Street, New Orleans, Louisiana, be sold.
The couple agreed to submit the Second Petition on memorandum only to the district court.[3] The district court, on February 6, 2018, rendered judgment finding the Agreement was "a valid and enforceable contract between the parties in accordance with Louisiana law-except as provided for within the July 29, 2016 Judgment ...." The district court issued written reasons which provided in pertinent part:[4]
Karen L. Brady argues that the Agreement-while invalid in form as a matrimonial agreement and reservation of fruits-remains an enforceable contract in accordance with Louisiana law.
*872 In opposition, David A. Pirner contends that the entire Agreement comprises a matrimonial agreement, which has been deemed null by this Court, and thus is unenforceable. In particular, [David] retorts that the nullity of the contract as a matrimonial agreement and reservation of fruits vitiates his consent-one of the requirements for the formation of a contract under Louisiana law. Under Louisiana Civil Code Article 1831, the burden of proof on this issue is twofold. First, [Karen] must establish that an obligation exists between the parties. See La. Civ. Code Art. 1831. Meanwhile, [David] must prove that said obligation is null. See id.
* * *
In accordance with Louisiana law, the Court finds that the Agreement is a valid and enforceable contract between the parties-except as provided for within the July 29, 2016 Judgment of this Court. The Agreement at issue is an act under private signature, signed by the parties on April 13, 2009. Therein, the parties purported to (1) establish a legal regime of separation of property, (2) reserve fruits and revenues of their separate property, and (3) create ancillary contractual obligations to have effect following the parties' separation, if such occurs. While the former two (2) provisions are null as to lack of appropriate form, the remainder of the Agreement is valid as an act under private signature.
* * *
Furthermore, the parties' consent was not vitiated when this Court held that the Agreement is null as an establishment of a legal regime of separation of property and reservation of fruits and revenues of the parties' separate property. Pursuant to Louisiana Civil Code Article 1927, "[a] contract is formed by the consent of the parties established through offer and acceptance." Here, the Agreement clearly evidences the consent of the parties.
* * *
[T]he Agreement does not include a contingency provision which bases the contractual obligations therein on the validity of the matrimonial agreement. Instead, the parties agreed to the following term therein:
12. Enforceability and Severability[.]
If any provision of this Agreement should hereafter be determined to be wholly or partially unenforceable, it shall not affect the validity or enforceability of the balance of this Agreement, and the balance shall be construed by the appropriate court of the State of Minnesota in a manner which such court deems to be reasonable and consistent with the intent of the parties at the time of the making of this Agreement.
[NOTE: As stated, the Civil District Court for the Parish of Orleans is the appropriate venue for this matter due to the untimely filing of Mr. Pirner's Declinatory Exception of Improper Venue.]
Based on the clear language of the Agreement, the parties intended for the Agreement to remain enforceable despite any potential nullity or invalidity.
On February 15, 2018, Ms. Brady filed a Motion for Partial New Trial or Reconsideration, or, Alternatively, for a Rule to Show Cause (the "Motion for Partial New Trial") asserting in part that the February 6, 2018 judgment did not include an order for payment of $175,000.00 by Mr. Pirner to Ms. Brady and an order that the 1331 Pine Street property be sold.
On February 26, 2018, Mr. Pirner filed a motion for a devolutive appeal of the February *873 6, 2018 judgment. The district court denied the motion writing "partial new trial motion is pending."
On May 4, 2018, Mr. Pirner filed a motion for devolutive appeal again seeking review of the February 6, 2018 judgment.
Three days later, on May 7, 2018, the couple entered a consent judgment on the Motion for Partial New Trial which significantly provided that Mr. Pirner pay Ms. Brady $175,000 cash and the property at 1331 Pine Street, New Orleans, Louisiana, be sold by private sale.
On that same day, May 7, 2018, the district court granted Mr. Pirner's appeal on the February 6, 2018 judgment. This appeal follows.
MOTION TO DISMISS APPEAL
Ms. Brady filed a Motion to Dismiss Appeal asserting this Court lacks appellate jurisdiction because the February 6, 2018 judgment was a partial judgment which the district court had not designated as a final judgment, and the parties entered a consent judgment on May 7, 2018, which is non-appealable and/or renders the February 6, 2018 judgment moot. We disagree.
As will be discussed infra , "[t]he purpose of a declaratory judgment is to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done." Bergen Brunswig Drug Co. v. Poulin , 93-1945 (La. App. 4 Cir. 6/24/94), 639 So.2d 453, 455 (citation omitted); See also , La. C.C.P. art. 1871 (wherein the scope of a declaratory judgment is codified and provides that "[c]ourts of record ... may declare rights, status, and other legal relations whether or not further relief is or could be claimed.").[5]
We find the February 6, 2017 judgment was a final judgment as the entire Agreement had been ruled upon. Ms. Brady's Motion for Partial New Trial did not alter the character of the February 6, 2017 judgment; rather, it ordered Mr. Pirner to comply with the terms of the Agreement that were found to be valid. Accordingly, Ms. Brady's Motion to Dismiss Appeal is denied.
DISCUSSION ON THE MERITS
On appeal, Mr. Pirner challenges the district court's February 6, 2018 judgment asserting that the district court, in granting declaratory relief to Mrs. Brady, committed legal error by (1) giving effect to certain provisions in the Agreement after declaring it null and void; and (2) giving effect to the severability clause after declaring the Agreement null and void.[6] Mr. Pirner states that there are no factual issues in dispute-only legal issues.
*874 The purpose of a declaratory judgment was addressed by this Court in Bergen Brunswig Drug Co. , 639 So.2d at 455-56 :
The purpose of a declaratory judgment pursuant to these codal provisions is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. Watts v. Aetna Cas. and Sur. Co. , 574 So.2d 364 (La. App. 1st Cir.1990).... A person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and declaratory judgment will remove that uncertainty or terminate that dispute. State, Etc. v. Sugarland Ventures, Inc. , 476 So.2d 970 (La. App. 1st Cir.), writ denied , 478 So.2d 909 (La. 1985) ; Morial v. Guste , 365 So.2d 289 (La. App. 4th Cir.), writ denied , 365 So.2d 1375 (La.1978); Dazet v. French Market Homestead , 533 So.2d 115 (La. App. 4th Cir.1988). When declaratory judgment is thus appropriate, neither the existence of another adequate remedy nor the fact that further relief has been or can be claimed will preclude a court from rendering judgment declaring a petitioner's rights or status. In Re P.V.W. , 424 So.2d 1015 (La.1982).
Louisiana Code of Civil Procedure article 1872 provides that a declaratory judgment can be utilized in construing contracts, and article 1873 states that "[a] contract may be construed either before or after there has been a breach thereof." "[T]he scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment.' " Edgar Benjamin Fontaine Testamentary Tr. v. Jackson Brewery Marketplace , 02-2337, pp. 5-6 (La. App. 4 Cir. 5/7/03), 847 So.2d 674, 677 (quoting In re Peter , 98-0701, p. 4-5 (La. App. 4 Cir. 12/23/98), 735 So.2d 665, 667 ). The Louisiana Supreme Court has declared that " '[t]rial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief.' " Id. , 02-2337, p. 5 (La. App. 4 Cir. 5/7/03), 847 So.2d at 677-78 (quoting Louisiana Supreme Court Committee on Bar Admissions v. Roberts , 00-2517, p. 3 (La. 2/21/01), 779 So.2d 726, 728 ). Additionally, this Court in Neivens v. Estrada-Belli , 17-0225, p. 5 (La. App. 4 Cir. 9/27/17), 228 So.3d 238, 243 (quoting Felix v. Safeway Ins. Co., 15-0701, p. 6 (La.App. 4 Cir. 12/16/15), 183 So.3d 627, 631 (citations omitted), explained that a de novo review was applied when no material facts are in dispute, as in this case. This Court continued:
When parties are bound by a valid contract and material facts are not in conflict, the contract's application to the case is a matter of law. An appellate review that is not founded upon any factual findings made at the trial court level, but is based upon an independent review and analysis of the contract within the four corners of the document, is not subject to the manifest error rule of law. In such cases, appellate review is simply whether the trial court was legally correct.
Id. , 17-0225, p. 5 (La. App. 4 Cir. 9/27/17), 228 So.3d 238 (quoting Barber v. Barber , 09-0780, p. 4 (La. App. 1 Cir. 5/7/10), 38 So.3d 1046, 1049 )(citations omitted); See also , Armstrong Airport Concessions v. K-Squared Rest., LLC , 15-0375, p. 9 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1101 (wherein this Court held that "[t]he instant appeal ... primarily presents a legal question of contractual interpretation, which is subject to de novo review on appeal.") Thus, applying these precepts to the case sub judice , this Court must determine whether the district court abused its discretion in granting the declaratory judgment and whether the district court's *875 review and analysis of the contract was legally correct.
Mr. Pirner asserts that the district court committed legal error by giving effect to certain provisions in the Agreement after declaring it null and void when the entire Agreement should be null and void. Mr. Pirner urges the entire Agreement should fall because his consent for the contract was vitiated when the provisions of the Agreement establishing a separate property regime between the parties were struck down. Mr. Pirner explains that his consent to enter into the Agreement was given with the understanding that the "couple would remain in separate property and retain the fruits and revenues of their separate property during the marriage." Further, Mr. Pirner argues that "[o]nce that underlying cause, or motivation to obligate himself, was removed by the trial court, there was no longer (1) any viable "consent" to the reformed terms, nor (2) any "cause" underlying the agreement."
Ms. Brady responds that the district court properly found the provisions establishing a separate property regime invalid, and the remainder of Agreement valid and enforceable. Ms. Brady asserts that the Agreement "is unambiguous and clearly expresses that the parties intended for the invalid provisions of the Agreement to be severable ... and the balance of the Agreement to continue to be valid and enforceable."
This Court in Fairbanks v. Tulane Univ. , 98-1228, p. 5 (La. App. 4 Cir. 3/31/99), 731 So.2d 983, 986 (citing Babkow v. Morris Bart, P.L.C. , 98 0256 (La. App. 4 Cir. 12/16/98), 726 So.2d 423, La. C.C. arts. 1918, 1927, 1966, and 1971 ), explained that "four elements are required for confection of a valid contract (1) the capacity to contract; (2) mutual consent; (3) a certain object; and (4) lawful cause. The first element is not contested by Mr. Pirner; thus, we will address the remaining three elements together as they are intertwined in this case.
"A contract is formed by the consent of the parties established through offer and acceptance." La. C.C. art. 1927. In Philips v. Berner , 00-103, p. 5 (La. App. 4 Cir. 5/16/01), 789 So.2d 41, 45 (citing Buruzs v. Buruzs , 96-1247 (La. App. 4 Cir. 12/27/96), 686 So.2d 1006 ), this Court held that "in order to find that there was an agreement between the parties and have consent pursuant to La. C.C. art. 1927, the court must find that there was a meeting of the minds of the parties." "Parties are free to contract for any object that is lawful, possible, and determined or determinable." La. C.C. art. 1971. Moreover, there can be more than one principal object to a contract. See Meador v. Toyota of Jefferson, Inc. , 332 So.2d 433, 436 (La. 1976). "Cause is the reason why a party obligates himself." La. C.C. art. 1967. "The reason why a party binds himself need not be to obtain something in return or to secure an advantage for himself." La. C.C. art. 1967 Revision Comment (c). Further, "[a]n obligation cannot exist without a lawful cause." La. C.C. art. 1966.
In Peironnet v. Matador Res. Co. , 12-2292, p. 19 (La. 6/28/13), 144 So.3d 791, 807, the Supreme Court summarized the statutory provisions regarding how a person's consent to a contract can be vitiated:
"Consent may be vitiated by error, fraud, or duress." La. Civ.Code art.1948. However, "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ.Code art.1949; see also La. Civ.Code art.1967; La. Civ.Code arts. 1823, 1824, 1826 (1870) ; Marty et Raynaud, Droit civil-Les obligations , Part I, at 111-112 (1962).
*876 Whereas, La. C.C. art. 1950 discusses error when it concerns cause:
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
Furthermore, this Court, in Lalla v. Calamar, N.V., 08-0952, p. 8 (La. App. 4 Cir. 2/11/09), 5 So.3d 927, 932, set forth the principles to determine the meaning and intent of parties to a contract:
Meaning and intent of parties to a written instrument is ordinarily determined from the instrument's four corners and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms. Abshire [v. Vermilion Parish School Bd. ], 02-2881, p. 5 [ (La. 6/27/03) ], 848 So.2d [552] at 555, citing Ortego v. State, Dept. of Transp. and Dev. , 96-1322 (La.2/25/97), 689 So.2d 1358. "The contract is the law between the parties, and no further interpretation may be made in search of the parties' intent when the words of the contract are clear, explicit and lead to no absurd consequences." Taylor v. Manuel , 01-0653, p. 3 (La.App. 3 Cir. 10/31/01), 799 So.2d 812, 815 ; citing Woolf & Magee v. Hughes , 95-863, p. 5 (La.App. 3 Cir. 12/6/95), 666 So.2d 1128, 1131, writ denied , 96-0073 (La.3/15/96), 669 So.2d 427.
In the case sub judice , a review within the four corners of the Agreement reflects the couple had distinct causes and multiple principal objects for consenting to the Agreement other than the establishment of a separate property regime.[7] For example, a section of the Agreement entitled "Rights upon Termination of Marriage" included a provision that Mr. Pirner would pay Ms. Brady a sum in accordance with the number of years they were married as set forth in the schedule annexed to the Agreement. Another section, entitled "Occupancy of the Existing Premises" provided that in the event the couple separated or terminated the marriage, what the couple would do with their separate property or jointly owned separate property acquired before the marriage such as the 1331 Pine Street property. Thus, Mr. Pirner's assertion that his consent for entering the contract was vitiated when the provisions of the Agreement establishing a separate property regime between the couple were struck down lacks merit.
Further, as discussed supra , the district court, in the July 29, 2016 judgment, found the provisions of the Agreement establishing *877 a separate property regime invalid because the Agreement was not executed in compliance with the specific formalities of La. C.C. arts. 2331 and 2332. The district court, in its written reasons for judgment, found that the Agreement did not base enforcement of the different agreed upon provisions to the validity of the establishment of a separate property regime; but, instead, the Agreement contained an "Enforceability and Severability" provision which showed "the parties intended for the Agreement to remain enforceable despite any potential nullity or invalidity." We agree.
"A contract is null when the requirements for its formation have not been met." La. C.C. art. 2029. Louisiana Civil Code Article 2034 provides that "[n]ullity of a provision [in a contract] does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision." In Hudson v. City of Bossier City , 05-0351, pp. 20-21 (La. 4/17/06), 930 So.2d 881, 894, the Supreme Court, referencing La. C.C. art. 2034, instructed:[8]
[L]ike other questions of contract interpretation, whether a [sic] agreement is severable is controlled generally by the intent of the parties as expressed by the contract terms and/or language. See Lord, Richard A., Willison on Contracts, § 45.5 21 4th ed.). Thus, the existence of a severability provision in a contract, "while not always regarded as conclusive, will generally be given considerable weight." Id.
In Lebouef v. Liner , 396 So.2d 376, 378 (La. App. 1 Cir. 1981), although not directly on point, our sister court was faced with the issue of whether provisions in a community property settlement agreement were severable when one of the provisions was found invalid. The couple, while separated but before divorce, entered into an agreement. As part of the agreement, the husband agreed to child support payments. When the husband failed to pay the child support as agreed and set forth in the agreement, the wife filed suit to enforce the agreement or in the alternative, to have it nullified. The trial court invalidated the child support clause of the agreement; however, it retained the remainder of the agreement finding the agreement was "based upon other substantial consideration." Id. On appeal, the wife asserted that if the child support clause was invalid, the entire agreement should fall. The First Circuit disagreed and affirmed the trial court judgment writing in pertinent part:
An illegal condition within a contract annuls the entire agreement only "to the extent to which the agreement depends on it." LSA-C.C. Art. 1893, Plainol, Volume 2, Section 1269, p. 720; Morse v. J. Ray McDermott and Co., Inc. , 344 So.2d 1353 (La. 1977). Plaintiff offered no evidence to prove the community property settlement was primarily dependent upon the child support clause. The settlement itself states other consideration for the agreement.
Id. , 396 So.2d at 378 (footnote omitted).
In the case sub judice , the express language of the Agreement provided that "[i]f any provision of this Agreement should hereafter be determined to be wholly or partially unenforceable, it shall not affect the validity or enforceability of the balance of this Agreement ...." Consequently, a *878 review within the four corners of the Agreement reflects it was the intent of the couple for any unenforceable or invalid provisions to be severable, and the remainder of the Agreement to be enforceable and valid.
Accordingly, we find the district court did not abuse its discretion in granting the February 6, 2018 declaratory judgment in favor of Ms. Brady and its judgment was legally correct.
CONCLUSION
For the reasons set forth above, the motion to dismiss appeal is denied, and the district court's February 6, 2018 judgment is affirmed.
MOTION TO DISMISS APPEAL DENIED; AFFIRMED.
BELSOME, J., CONCURS, IN PART, AND DISSENTS, IN PART, WITH REASONS.
BELSOME, J., CONCURS, IN PART, AND DISSENTS, IN PART, WITH REASONS.
The Defendant, Mr. David Pirner, appeals the trial court's judgment concerning a prenuptial agreement he signed with the Plaintiff, Ms. Karen Brady. The trial court rendered two judgments regarding the prenuptial agreement. In its first judgment, the trial court found that the separate property agreement was invalid. In its second judgment, it found the remainder of the agreement to be a valid and enforceable contract between the parties. For the following reasons, I respectfully concur, in part, and dissent, in part, from the majority's opinion.
As a preliminary matter, I concur with the majority ruling to deny the motion to dismiss the appeal filed by the Plaintiff. In addition, I concur in the majority's opinion in affirming the trial court's initial judgment finding the separate property agreement invalid as to form.
However, I dissent from the majority's finding that the remaining clauses in the contract are valid. Therefore, I would reverse the trial court's second judgment.
In order to confect a valid contract, four elements are required: (1) the capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful cause. In re Succession of Flanigan , 06-1402, p. 6 (La. App. 4 Cir. 6/13/07), 961 So.2d 541, 544 ; see also La. C.C. arts. 1918, 1927, 1966 and 1971.
"Consent may be vitiated by error, fraud, or duress." La. Civ.Code art.1948. However, "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ.Code art.1949; see also La. Civ.Code art.1967; La. Civ.Code arts. 1823, 1824, 1826 (1870) ; Marty et Raynaud, Droit civil-Les obligations , Part I, at 111-112 (1962). Cause is the reason why a party obligates himself, and without a lawful cause, an obligation cannot exist. La. Civ.Code arts.1966 and 1967.
Peironnet v. Matador Res. Co. , 12-2292 (La. 6/28/13), 144 So.3d 791, 807.
In this case, the parties entered into a prenuptial agreement. As such, the principal cause of the agreement was to create a separate property regime. Since the primary cause was to create a separate property regime, the additional terms in the contract hinged upon the validity of separate the property clause. Without a valid separate property agreement, consent to the remainder of the agreement was vitiated. Therefore, the entire contract is invalid.
*879 Accordingly, I would partially reverse the trial court's judgment pertaining to the enforcement of the remainder of the agreement. For these reasons, I concur, in part, and dissent, in part, from the majority's opinion.

Mr. Pirner and Mrs. Brady will collectively be referred to in the opinion as the "couple."

A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. La. C.C. art. 2328. "Because matrimonial agreements are 'given a special designation' in the civil code, they are nominate contracts, subject also to the special rules in the title on matrimonial regimes, La. C.C. arts. 2325, et seq. " Radcliffe 10, L.L.C. v. Burger , 16-0768, pp. 3-4 (La. 1/25/17), 219 So.3d 296, 298-99 (citing La. C.C. arts. 1914 and 1916) (footnotes omitted). "A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses." La. C.C. art. 2331. Additionally, "[a] matrimonial agreement, or a judgment establishing a regime of separation of property is effective toward third persons as to immovable property, when filed for registry in the conveyance records of the parish in which the property is situated and as to movables when filed for registry in the parish or parishes in which the spouses are domiciled." La. C.C. art. 2332.

On July 14, 2017, the parties filed a Joint Motion to Submit Petition for Declaratory Judgment on Memoranda. Ms. Brady filed a motion seeking the district court to strike Mr. Pirner's exhibits attached to his memorandum. In the February 6, 2018 judgment, the district court denied the motion as moot. In its written reasons, the district court noted it did not consider the exhibits in ruling on the declaratory judgment.

This Court in 429 Bourbon St., LLC v. RMDR Investments, Inc. , 16-0800, pp. 20-21 (La. App. 4 Cir. 11/15/17), 230 So.3d 256, 269, writ denied , 17-02054 (La. 2/2/18), 235 So.3d 1106 (other citations omitted) (footnote omitted), explained that "[a] judgment and reasons for judgment are two separate and distinct documents. La. Code Civ. Proc. art. 1918. Appeals are taken from the judgment, not the written reasons for judgment. See La. Code Civ. P. arts. 2082, 2083 [other citations omitted]."
Additionally, "[t]he written reasons for judgment are merely an explication of the trial court's determinations. They do not alter, amend, or affect the final judgment being appealed ...." Wooley v. Lucksinger , 09-0571, pp. 77-78 (La. 4/1/11), 61 So.3d 507, 572 (quoting State in the Interest of Mason , 356 So.2d 530, 532 (La. App. 1st Cir. 1977) ). If written reasons are given, the appellate court is entitled to review the written reasons for insight into the district court's judgment. Id. , 09-0571, p. 78 (La. 4/1/11), 61 So.3d 507, 572.

The Comments to Article 1871 expounds that the declaratory judgment does not embody a "specific award of relief." La. C.C.P. art. 1871, Revision Comment; See also , Burton v. Lumbermens Mut. Cas. Co. , 152 So.2d 235, 239 (La. App. 4th Cir. 1963) (wherein this Court held "[w]e do not believe that the scope of the declaratory judgment act encompasses the authority to render money judgments in view of the rationale of LSA-C.C.P. Art. 1871."); Campbell v. Evangeline Par. Police Jury , 14-1301, p. 14 (La. App. 3 Cir. 5/6/15), 164 So.3d 408, 418 (citation omitted)(wherein the appellate court explained that a declaratory judgment that makes a specific award of relief goes beyond the scope of a declaratory judgment.).

Mr. Pirner does not contest the district court's application of Louisiana law although the Agreement provided that Minnesota law be applied. In Wooley v. Lucksinger , 09-0571, p. 62 (La. 4/1/11), 61 So.3d 507, 562-63, the Supreme Court explained an appellate court has the authority to raise this issue sua sponte , if the interest of justice clearly requires. In this case, we decline to do so.

In Armstrong Airport Concessions, v. K-Squared Rest., LLC , 15-0375, p. 11 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1102, this Court explained there are divisible and indivisible obligations:
The Louisiana Civil Code differentiates between divisible and indivisible obligations as follows:
An obligation is divisible when the object of the performance is susceptible of division.
An obligation is indivisible when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division.
La. C.C. art. 1815. "Indivisible obligations cannot be partially executed nor, a priori, can they be partially rescinded." Musser v. Copping , 325 So.2d 681, 684 (La. App. 4th Cir. 1975).
The Armstrong Court, citing Hudson , supra , Lebouef v. Liner , 396 So.2d 376 (La. App. 1 Cir. 1981), and Barber v. Barber , 09-0780, pp. 5, 6 (La. App. 1 Cir. 5/7/10), 38 So.3d 1046, stated that "whether a contract is severable or divisible [or indivisible] is generally guided by the intent of the parties as expressed by the contract terms." Id. , 5-0375, pp. 12-13, 178 So.3d at 1102-03.

In Hudson , 930 So.2d 881, the trial court found two casino revenue agreements valid except for one provision which it found was severable, but the appellate court reversed finding the entire agreements invalid. On review, the Supreme Court reversed the appellate court's opinion and reinstated the district court's judgment.